UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KELLY W. REDDELL, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| vs. ) | CASE NO. 06-CV-337-FHM |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the ) | |
| Social Security Administration,[1] ) | |
| ) | |
| DEFENDANT. ) | |

### ORDER

Plaintiff, Kelly W. Reddell, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d

---

[1] On February 1, 2007, Michael J. Astrue was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart the former Commissioner, as defendant in this case. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff's January 26, 2004 application for Disability Insurance benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held June 3, 2005. By decision dated October 27, 2005, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on May 10, 2006. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was born June 18, 1960, and was 44 years old at the time of the hearing. [R. 46, 204]. He claims to have been unable to work since July 21, 2003, due to "old leg injuries," a "poorly healed arm fracture," hernias, low back pain, hepatitis C, and a seizure disorder. [Plaintiff's Brief, p. 1 ]. The ALJ determined that Plaintiff has severe impairments consisting of status post left humerus fracture and hepatitis C. [R. 17]. He concluded, however, that Plaintiff retains the residual functional capacity (RFC) to perform light level work activity that does not require more than occasional stooping, crouching, crawling, kneeling, balancing or climbing stairs or ladders or overhead reaching with the left arm. [R. 19]. The ALJ determined that, with these restrictions, Plaintiff could not return to his past relevant heavy work. [R. 20]. Based upon the testimony of a vocational expert (VE), the ALJ found that there are other jobs in the economy in significant numbers that Plaintiff could perform with that RFC. [R. 20, 23]. He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 23]. The case was thus decided at step five of the five-step evaluative

sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ failed: 1) to perform a proper determination at steps 2 and 3 of the sequential evaluation process; 2) to properly evaluate the report of the consultative examiner; 3) to perform a proper credibility determination; and 4) to perform a proper determination at step 5 of the sequential evaluation process. [Plaintiff's Brief, p. 1-2]. For the reasons discussed below, the Court affirms the decision of the Commissioner.

## Step Two

At step two, the ALJ is to determine whether the claimant has an "impairment or combination of impairments which significantly limits [his] ... ability to do basic work activities." 20 C.F.R. § 404.1520(c). This step requires a *de minimis* showing of impairment. *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997)(citing *Williams*, 844 F.2d at 751). However, the claimant must show more than the mere presence of a condition or ailment. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (step two designed to identify "at an early stage" claimants with such slight impairments they would be unlikely to be found disabled even if age, education, and experience were considered). "[T]he claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities..." *Id.* at 751. Unless the claimant makes a *de minimis* showing of medical severity, the evaluation process ends and the claimant is determined not disabled. *Id.*

Plaintiff claims he developed a seizure disorder after the hearing but before the decision was issued which the ALJ failed to consider. [Plaintiff's Brief, p. 2]. Plaintiff cites to evidence consisting of emergency room records from July 16, 2005, when Plaintiff went out to work in his flower beds, collapsed and had what his girlfriend described as "generalized seizure which lasted five minutes." [R. 185-196]. Plaintiff complains that the ALJ did not note the possibility of an organic mental disorder as a potential severe impairment, "even after receiving evidence of Claimant's seizure disorder." [Plaintiff's Brief, p. 2]. Plaintiff mischaracterizes the record. Plaintiff was monitored for "possible seizure" for over three hours in the emergency room on July 16, 2005. [R. 186, 189, 193-196]. Blood chemistry tests, an electrocardiograph (EKG) and chest x-ray were conducted.[3] [R. 193-196]. No seizure activity was observed and Plaintiff was released in improved and stable condition. [R. 189]. A MRI brain scan performed on September 12, 2005, was normal. [R. 182-183]. An Electroencephalogram (EEG)[4] was conducted on September 13, 2005, and was reported to be normal with no epileptiform abnormalities. [R. 179-180]. The physician noted that Plaintiff was taking Ultran,[5] "which can cause seizures in susceptible" [persons] and he recommended clinical correlation. [R. 180]. No diagnosis of seizure disorder appears anywhere in the record. Nor is there any indication that Plaintiff had

---

[3] Plaintiff refused to provide a urine specimen. [189].

[4] EEG - A recording of the currents emanating spontaneously from nerve cells in the brain, also called brain waves. *Dorland's Ill. Med. Dictionary* (*Dorland's*), 535 (28th ed. 1994).

[5] Ultran is an analgesic indicated for management of moderate to moderately severe pain. Physician's Desk Reference (PDR) at 2254-2255 (53rd ed.1999).

an organic mental disorder. An impairment must result from anatomical, physiological or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508. The impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only by a claimant's statement of symptoms. 20 C.F.R. § 404.1527; § 404.1528 (describing requirements of medical findings). The regulations make it clear that, as a general matter, the claimant must provide the evidence to support his claim. See 20 C.F.R. §§ 404.1514, 404.1516. Plaintiff has not done so here.

Citing to "back x-rays [which] reveal that he has osteophytes" Plaintiff complains the ALJ "did not mention Claimant's arthritic changes of the spine." [Plaintiff's Brief, p. 2]. An Osteophyte is defined as "a bony excrescence or osseous outgrowth." *Dorland's* at 1202. Although back pain was reported on three occasions and was noted to be decreased at the last recording, none of Plaintiff's treating physicians found or diagnosed arthritic changes in Plaintiff's spine. [R. 135, 136, 137]. The Court finds no error was committed by the ALJ in failing to include a back impairment in his step two findings.

The same is true of Plaintiff's claim of hernia as a severe impairment. The medical record contains documentation of surgical repair of recurrent left indirect inquinal hernia on July 21, 2003. [R. 95-98]. Plaintiff did not complain of any symptoms, including pain, related to hernia after that date. Thus, there was no requirement for the ALJ to identify Plaintiff's hernia as a severe impairment at step two.

Plaintiff testified he was depressed every day. [R. 222-223]. As support for this allegation, Plaintiff cited treatment records, one of which does not mention depression

5

and shows only right humerus fracture and Dyspepsia, a digestive problem as defined in *Dorland's* at 517. [R. 135]. In two of the other pages cited, Plaintiff gave a history of depression to emergency room physicians on July 16, 2005. [R. 186-187]. The diagnosis of depression appears once in the treatment record on April 27, 2005, when Plaintiff was prescribed Paxil.[6] [R. 123]. Sleep disturbance was recorded once before that, on January 27, 2005, although the cause was not identified, and Plaintiff was advised he could increase his dosage of Elavil.[7] [R.130]. There is no further evidence in the record that Plaintiff sought treatment for depression. Plaintiff did not include depression as a condition that prevents him from working in any of his disability application papers. [R. 56, 57, 75, 76, 80, 87, 88, 91]. As noted above, a diagnosis of a condition alone is not sufficient to establish the existence of a severe impairment that significantly impacts the claimant's ability to perform work activities. See 20 C.F.R. § 404.1521(a) and 416.921(a).

The record does not support Plaintiff's claim that he has severe impairments of seizure disorder and/or an organic mental disorder, arthritic changes of the spine, hernia and depression. The ALJ properly found Plaintiff's severe impairments are "status post left humerus fracture" and hepatitis C and the record supports the ALJ's step two determination.

---

[6] Paxil is a psychotropic drug used for the treatment of depression and anxiety. *PDR* at 3078.

[7] Elavil is indicated for relief of the symptoms of depression. *PDR* at 626.

### Step Three

Plaintiff claims his treatment records offer evidence that he meets Listing 12.04. [Plaintiff's Brief, p. 3]. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04 *Affective Disorders*. As stated above, the Court finds no merit to Plaintiff's claims regarding the ALJ's step two findings. Because Plaintiff did not have a severe affective disorder, the ALJ was not required to consider that listing at step three. *See* 20 C.F.R. § 404.1525(a) (listings describe only severe impairments). The ALJ evaluated the evidence as it relates to the listings for Section 1.07, fracture of an upper extremity and Section 5.05, chronic liver disease. After review of the administrative record and the ALJ's decision, the Court finds the ALJ committed no error in his step three determination that warrants reversal.

### Consultative Examination Report

On May 3, 2004, Plaintiff was examined by Moses A. Owoso, M.D., a consultative examiner. [R. 109-113]. Plaintiff contends Dr. Owoso's report is internally inconsistent because he recorded Plaintiff's general appearance as "not pale or jaundiced" and yet found "[n]o conjunctival pallor" upon examination of Plaintiff's eyes. [Plaintiff's Brief, p. 4; Plaintiff's Reply Brief, p. 2]. The conjunctiva is the delicate membrane that lines the eyelids and covers the exposed surface of the sclera (outer coat of the eyeball). See *Dorland's* p. 369 and p. 1494]. Dr. Owoso's observation regarding Plaintiff's skin color as not pale or jaundiced does not conflict with his examination of Plaintiff's eyes as having no pallor. Plaintiff's allegation of error in this regard is without merit.

**Credibility Determination**

Plaintiff challenges the ALJ's credibility determination because he relied upon Plaintiff's activities of daily living (ADLs) without demonstrating that the activities were performed on a full time basis. [Plaintiff's Brief, p. 5]. He contends the ALJ did not state which of Plaintiff's testimonial statements he believed and which he did not believe. *Id.* He also complains the ALJ applied the wrong standard in relying upon the lack of functional restrictions imposed by any of Plaintiff's treating physicians in evaluating Plaintiff's credibility. *Id.* After review of the record and the ALJ's decision, the Court concludes that substantial evidence supports the ALJ's ruling with regard to his credibility findings. Daily activities, as well as the inconsistency between the claimant's allegations and the objective medical evidence are proper factors for the ALJ to consider in determining whether the claimant is credible. *Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1993). Plaintiff points to no evidence, other than his subjective complaints, that support his claims of disabling pain. Contrary to Plaintiff's argument, the ALJ adequately set forth the specific evidence he relied on in evaluating Plaintiff's credibility and discussed his reasons for determining Plaintiff's allegations of disabling pain were not credible. Because the Court concludes that there is sufficient evidence in the record to support the ALJ's credibility findings and that the ALJ properly linked his credibility findings to the record, there is no reason to deviate from the general rule to accord deference to the ALJ's credibility determination, see *James v. Chater*, 96F.3d 1341, 1342 (10th Cir. 1996)(witness credibility is province of Commissioner whose judgment is entitled to considerable deference).

## Step Five

As to Plaintiff's claim that the jobs identified by the vocational expert (VE) included reaching activities he cannot perform, the Court agrees with the Commissioner that no such limitations were found to exist by the ALJ and, therefore, there was no need to include such restrictions in the RFC or in the hypothetical posed to the VE. Hypothetical questions need only reflect impairments and limitations that are borne out by the evidentiary record. *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir.1996). At the hearing, the VE was asked specifically about the availability of jobs that required no overhead reaching with the left, nondominant arm. [R. 228]. He identified, as representative samples, the jobs adopted by the ALJ in his step five findings. [R. 229]. Plaintiff's attorney elicited a response from the VE that no jobs would be available if infrequent reaching out were added as a limitation. [R. 230]. However, because this hypothetical included restrictions not accepted as true by the ALJ, he was not required to accept the vocational expert's response. See *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990); *see also Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir.1993) (hypothetical does not need to include unestablished impairments).

## Conclusion

The ALJ's decision demonstrates that he properly considered all of the medical reports and other evidence in the record in his determination that Plaintiff retained the capacity to perform a wide range of light work. The record as a whole contains substantial evidence to support the determination of the ALJ that Plaintiff is not

disabled.  Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 12th day of June, 2007.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE